**SEABOARD ICE CO. v. UNITED STATES.**

**No. 45911.**

Court of Claims.

June 4, 1945.

882

Richard F. Canning, of Providence, R. I. (Andrew P. Quinn, of Providence, R. I., on the brief), for plaintiff.

H. S. Fessenden, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D.C., on the brief), for defendant.

Before WHALEY, Chief Justice, and WHITAKER, LITTLETON, and MADDEN, Judges.

WHITAKER, Judge.

Plaintiff seeks to recover the undistributed profits taxes assessed against it for the fiscal years ending August 31, 1937, and August 31, 1938. It alleges the assessments were erroneous because it was not given the credit allowed by section 26(c) (1) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 1664. This section allows a credit for earnings that were not distributed because of a prohibition against the payment of dividends contained in a written contract entered into prior to May 1, 1936.[1]

■ This tax on undistributed profits had for its primary purpose the improvement of business conditions by putting money into circulation. It was intended to compel corporations to distribute their

[1] This section reads in part:

"(c) Contracts Restricting Payment of Dividends.

"(1) *Prohibition on payment of dividends.* An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * * *"

profits. So, if a corporation could not distribute its profits without violating a written contract, it was exempted from the tax to this extent.

The requirement that the prohibitory contract be in writing was for the manifest purpose of avoiding controversy as to whether or not there was such a contract.

Since, to be exempt, the contract must have been in writing, our question is, Was there a written contract that prohibited the payment of dividends in the years in question? The plaintiff says the indenture securing its General Mortgage Bonds was such a contract.

In determining whether or not this indenture does in fact prohibit the payment of dividends, we must give effect, of course, not only to its letter, but also to all inferences that may be fairly drawn therefrom. If the contract deals with the payment of dividends and payment of the particular dividends in question is impliedly prohibited by it, it is as much prohibited by a "written contract" as if prohibited by its letter. Also, in determining the intent of the parties as evidenced by the written contract, we may and should take into account all the facts and circumstances surrounding its execution.

The contract in question was entered into under the following circumstances: The plaintiff, a New Jersey corporation, is the successor of the Seaboard Ice Company of Maine. This latter company, hereinafter referred to as the old company, owned all the capital stock of the Ice Service Corporation. The old company, finding itself unable to meet the interest on its bonds and debentures due December 1, 1933, filed a voluntary petition in bankruptcy and was adjudicated a bankrupt on November 29, 1933. The holders of its securities later proposed and secured the adoption of a plan of reorganization under which plaintiff (1) assumed $165,612 of the Secured Serial Notes of the Ice Service Corporation; (2) issued $95,000 of Serial Mortgage Bonds for $90,000 of Secured Demand Notes of the old company; (3) issued $702,000 of General Mortgage Bonds for $650,000 of the First Mortgage Bonds of the old company; and (4) gave common stock for the old company's debentures and income bonds.

The Secured Serial Notes assumed by plaintiff matured on the first day of September, October, November and December in 1934, and on the first day of the same months in 1935 and 1936. The $95,000 of Serial Mortgage Bonds matured: $30,000 on August 31, 1937; $30,000 on August 31, 1938; and $35,000 on August 31, 1939. It is the tax on that part of plaintiff's earnings that, it is said, were required to be used to pay the Secured Serial notes and the Serial Mortgage Bonds maturing between the date of plaintiff's incorporation and September 1, 1938, that is in issue.

The indenture upon which plaintiff relies reads in Article II, section 1, as follows:

"The Bonds shall bear interest at a fixed rate of four per cent (4%) per annum (herein called fixed interest) from September 1, 1938, or from the interest payment date (March first or September first) next succeeding the date on which all of the 6% Secured Serial Notes and all of the 6% Serial Mortgage Bonds of the Company shall have been paid off, whichever is the earlier, and such interest shall be payable, semi-annually on March first and September first, beginning with the interest payment date next succeeding the date on which said interest begins to accrue.

"The Bonds shall also be entitled to receive additional interest (herein called income interest) at the rate of two and one-half per cent (2½%) per annum from the begining of the fiscal year of the Company during which the 4% fixed interest shall begin to accrue if such fixed interest shall begin to accrue on September first, or from the beginning of the next succeeding fiscal year if such fixed interest shall begin to accrue on March first, but said income interest shall accrue and be payable only if and to the extent that the same shall be earned in the fiscal year in which it accrues or in some subsequent fiscal year, as hereinafter in Article V hereof provided.

"Notwithstanding any of the above provisions or any other provisions of the Bonds or this Indenture in regard to the payment of interest, no interest, fixed or income, shall be paid on the Bonds so long as any default shall exist as to the principal of or interest on the 6% Serial Mortgage Bonds of the Company."

Article V, section 7 thereof, reads: "The Company covenants that no dividends will be declared or paid by the Company on any of its stock unless and until all accumulated unpaid interest, fixed and/or income, on said Bonds to the date of the declaration of such dividend shall have been paid in full or funds for the payment

thereof shall have been deposited with the Corporate Trustee under this Indenture."

It was evidently in order that plaintiff might use its earnings to pay off its indebtedness evidenced by the serial notes and bonds as they matured that the running of interest on the $702,000 of General Mortgage Bonds was deferred from February 1, 1935, the date of the indenture, until September 1, 1938, by which time all the serial notes would have matured and all but $35,000 of the serial bonds would have matured. Section 1 of Article II of the indenture provided, as seen, that interest on the bonds would not begin to accrue until September 1, 1938, unless the Secured Serial Notes and Serial Mortgage Bonds were paid off before that time, in which event interest would begin to run on the next interest payment date following the date these securities were paid in full. The deferment of the running of interest was evidently in order that earnings might be devoted to the payment of this indebtedness.

■ If, instead of paying this indebtedness, the company had paid out its earnings in dividends, we think it would have breached its agreement with its creditors. Indeed, a declaration of a dividend would not only have been a breach of contract, it also would have been unlawful while these debts were due and outstanding. Some of the notes were past due when they were assumed by plaintiff, others matured monthly beginning in September of 1935, and others matured monthly beginning in September 1936. One installment on the Serial Mortgage Bonds matured in the fiscal year ending in 1937, and another in the one ending in 1938. Until a corporation pays or provides for the payment of its debts that are due, it cannot lawfully declare dividends. Fletcher Cyclopedia Corporations, section 5340, and cases cited.

■ Not only was it the intention to prohibit the payment of dividends before September 1, 1938, unless the Secured Serial Notes and Serial Mortgage Bonds were paid off earlier, but it was also the intention to prevent the payment of dividends until all unpaid and accumulated interest on the General Mortgage Bonds had been paid, as set out in Article V, section 7, of the indenture, supra.

So, reading all the pertinent provisions of the instrument together, it seems that it was the intention of the parties that between the date of plaintiff's organization and September 1, 1938, the earnings of the company were to be devoted, first, to the payment of the Secured Serial Notes and to the payment of such installments of the Serial Mortgage Bonds as matured before that time; second, beginning on September 1, 1938, if the Serial Mortgage Bonds had not been paid before this time, to the payment of the remaining installment on the Serial Mortgage Bonds (last paragraph of Article II, section 1, supra); third, to the payment of interest on the General Mortgage Bonds; and, lastly, to the payment of dividends. If this was the intention, and we think it was, the declaration of a dividend in either of the fiscal years in question, before the Secured Serial Notes and the Serial Mortgage Bonds were paid, was prohibited by the written instrument upon which plaintiff relies.

Plaintiff is entitled to a credit against the undistributed profits tax for the fiscal years ending in 1937 and 1938 of the amount of its earnings which were required to be used in each of the fiscal years to discharge its indebtedness on the Secured Serial Notes and the Serial Mortgage Bonds maturing in those years.

Judgment will be suspended to await the filing of a stipulation by the parties, or, in the absence of a stipulation, until the incoming of a report by a commissioner, showing the amount of the refund due, computed in accordance with this opinion. It is so ordered.

WHALEY, Chief Justice, and MADDEN and LITTLETON, Judges, concur.

JONES, J., took no part in the decision of this case.